UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Andrea Zimmerman,<br><br>  Plaintiff,<br><br>v.<br><br>Standard Insurance Company,<br><br>  Defendant. | Case No. 20-cv-1336 (ECT/HB)<br><br>**REPORT & RECOMMENDATION ON PLAINTIFF'S MOTION TO AMEND COMPLIANT** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Plaintiff Andrea Zimmerman's Motion to Amend Complaint [ECF No. 16].  Plaintiff originally filed her complaint in state court and Defendant removed it to federal court on June 9, 2020.  [ECF No. 1.]  On October 8, 2020, Plaintiff amended her complaint.  [ECF No. 9.]  Plaintiff now moves to amend her pleading to allege bad faith damages under Minnesota Statute § 604.18.  The Court respectfully recommends that the motion be denied on the ground that § 604.18 is not applicable to claims for denial of benefits under a disability insurance policy.

**I.   BACKGROUND**

Plaintiff is self-employed in business consulting and event planning, and has a disability insurance policy through Defendant, an insurance provider.  (Proposed Second

Am. Compl. (hereafter "PSAC")[1] ¶¶ 1–4 [ECF No. 22].) On December 20, 2018, Plaintiff slipped on ice and fell, hitting her head. (*Id.* ¶ 7.) Plaintiff says she was initially diagnosed with a concussion and has since been diagnosed with post-concussive syndrome, causing her ongoing dizziness, vertigo, tinnitus, double vision, ataxic gait, fatigue, brain fog, and cognitive difficulties. (*Id.*) Plaintiff was out of work entirely for a month, from December 20, 2018, through January 21, 2019. (*Id.*) Beginning in January 2019, Plaintiff returned to work part-time. (*Id.*) She continues through the present to only be able to work limited and inconsistent hours. (*Id.*)

Plaintiff filed a Notice of Claim with Defendant on December 27, 2018. (*Id.*) As part of that claim, Plaintiff provided Defendant with copies of her medical records. (*Id.* ¶¶ 7–8, 13–15.) Plaintiff's claim was denied on June 14, 2019, after Defendant concluded there was insufficient information to support Plaintiff's limitations. (*Id.*; Def.'s Mem. Opp'n Mot. at 5 [ECF No. 24].) Plaintiff filed an administrative appeal in December 2019 and provided Defendant with supplemental medical records. (PSAC ¶ 7.) That appeal was again denied. (*Id.*) Plaintiff filed this suit for residual disability benefits running from January 22, 2019, to the present date and continuing. (*Id.*)

In the instant motion, Plaintiff seeks to add a claim under Minnesota Statute § 604.18. In cases to which the statute is applicable, a court may award "(1) an amount equal to one-half of the proceeds awarded that are in excess of an amount offered by the insurer at least ten days before the trial begins or $250,000, whichever is less; and (2)

---

[1] When discussing Plaintiff's allegations, the Court will refer to her PSAC, as that is the pleading that must support her instant motion.

2

reasonable attorney fees actually incurred to establish the insurer's violation of this section" if the insured can show (1) that the insurer lacked a reasonable basis for denying the benefits of the insurance policy; and (2) that the insurer knew of the lack of a reasonable basis for denying the benefits or acted in reckless disregard of the lack of a reasonable basis for denying the benefits. Minn. Stat. § 604.18, subd. 2(a), subd. 3. The statute provides, however, that claimants are not permitted to seek recovery under this section in their initial filing, but may later move to amend the pleadings to include such a claim. § 604.18, subd. 4. The statute prescribes the following process by which a court may grant the motion:

> The motion must allege the applicable legal basis under this section for awarding taxable costs under this section, and must be accompanied by one or more affidavits showing the factual basis for the motion. The motion may be opposed by the submission of one or more affidavits showing there is no factual basis for the motion. At the hearing, if the court finds prima facie evidence in support of the motion, the court may grant the moving party permission to amend the pleadings to claim taxable costs under this section.

*Id.*

Plaintiff timely filed her motion to add this claim. (*See* Pretrial Sched. Ord. at 2 [ECF No. 13].) Defendant argues Plaintiff's proposed amendment should be denied as futile for two reasons. First, it argues that Minnesota Statute § 604.18 does not apply to disability insurance policies. Second, it argues that even if the statute applies, Plaintiff has not alleged a plausible claim for bad faith denial of benefits.

**II.   DISCUSSION**

Rule 15 provides that a court should freely grant leave to amend a pleading "when

3

justice so requires." Fed. R. Civ. P. 15(a)(2). But even under this liberal standard, parties do not have an absolute right to amend their pleadings. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). The decision whether to permit amendment falls within the sound discretion of the district court. *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998). A court may deny leave to amend "based upon a finding of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in previous amendments, undue prejudice to the non-moving party, or futility." *Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007) (citation omitted). Here, Defendant opposes Plaintiff's motion to amend to add a bad faith claim only on the ground that it would be futile.

When a party challenges a proposed amendment on the basis of futility, the Court considers whether the amendment could withstand a Rule 12(b)(6) motion to dismiss. *See Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008). Dismissal is warranted under Rule 12(b)(6) when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### A. Applicability of Minnesota Statute § 604.18 to Disability Insurance

Defendant argues first that Plaintiff's motion to amend her complaint to allege a claim for bad faith denial of benefits is futile because disability insurance policies like the

4

one at issue here are not subject to § 604.18.  If the statute does not apply to Plaintiff's claim, then the proposed amendment is obviously futile.  The Court begins its analysis by examining the text of the statute and assessing whether the statutory language is ambiguous.  *Funk v. O'Connor*, 916 N.W.2d 319, 321 (Minn. 2018).  "A statute is ambiguous only if it is subject to more than one reasonable interpretation." *State v. Thonesavanh*, 904 N.W.2d 432, 435 (Minn. 2017) (quoting *500, LLC v. City of Minneapolis*, 837 N.W.2d 287, 290 (Minn. 2013)).  If it is not, the Court must apply the plain language of the statute.  *Funk*, 916 N.W.2d at 321.  Where the legislature has expressly defined a word or term, however, the Court must employ that definition even if it is arguably different from the meaning commonly accorded that term in everyday usage.  *See, e.g.*, *Callanan v. Runyun*, 903 F. Supp. 1285, 1294 (D. Minn. 1994), *aff'd*, 75 F.3d 1293 (8th Cir. 1996) (relying on the statute's definition of "person" instead of the definition of the word as used "in common parlance," because to do otherwise would contravene the legislature's intent).

Minnesota Statute § 604.18 contains five subdivisions.  The first subdivision defines various terms "for purposes of this section," including the term "insurance policy."  This is a critical definition since liability under subdivision 2 only attaches in the event of a bad faith denial of "the benefits of an insurance policy." § 604.18, subd. 2(a).  Subdivision 1 defines an "insurance policy" as a "written agreement between an insured and an insurer that obligates an insurer to pay proceeds directly to an insured." Minn. Stat. § 604.18, subd. 1(a).  *But* the definition goes on to exclude certain agreements

from the definition of an insurance policy and, therefore, from the application of the section.  § 604.18, subd. 1(a).  One such excluded agreement is "a written agreement of a health carrier, as defined in section 62A.011."  § 604.18, subd. 1(a)(2).

The definitional trail then leads to Minnesota Statute § 62A.011, which is a list of defined terms related to "accident and health insurance."  A "health carrier" is defined in subdivision 2 as "an insurance company licensed under chapter 60A to offer, sell, or issue a policy of accident and sickness insurance as defined in section 62A.01; a nonprofit health service plan corporation operating under chapter 62C; a health maintenance organization operating under chapter 62D; a fraternal benefit society operating under chapter 64B; or a joint self-insurance employee health plan operating under chapter 62H."  Minn. Stat. § 62A.011, subd. 2.

Since a "health carrier" is defined to include a company licensed under Chapter 60A to sell "a policy of accident and sickness insurance as defined in section 62A.01," the Court moves to that section and finds that a "policy of accident and sickness insurance" is defined to "include[] any policy covering the kind of insurance described in section 60A.06, subdivision 1, clause (5)(a)."  Minn. Stat. § 62A.01, subd. 1.  Section 60A.06, subdivision 1, contains an extensive list of the types of insurance that may be sold by insurance companies in the state of Minnesota.  Clause 5(a) identifies, as one such type, insurance "against loss or damage by the sickness, bodily injury or death by accident of the assured or dependents, or those for whom the assured has assumed a

portion of the liability for the loss or damage, including liability for payment of medical care costs or for provision of medical care." § 60A.06, subd. 1(5)(a).

Thus, a "health carrier" is a company that sells "a policy of accident and sickness insurance," which in turn is defined as insurance "against loss or damage by the sickness, bodily injury, or death by accident of the assured. . . ." Minnesota Statute § 604.18 therefore does not apply to the denial of benefits under a policy that insures "against loss or damage by the sickness, bodily injury or death by accident of the assured." Defendant argues that phrase clearly includes disability policies, and therefore disability policies are not covered by § 604.18. Plaintiff argues that the exclusion of agreements with "health carriers" from the scope of § 604.18 can only reasonably be understood to mean health insurance policies, not disability policies.

Plaintiff bases her argument in large part on the last clause in the definition of "accident and sickness insurance," which describes such insurance as "including liability for payment of medical care costs or for provision of medical care." § 60A.06, subd. 1(5)(a). Plaintiff argues this demonstrates that "accident and sickness insurance" was intended only to encompass policies covering medical care—what might in everyday conversation be called "medical insurance" or "health insurance." She argues the use of the term "health carrier" in § 604.18, subd. 1(a)(2) further bolsters this interpretation.

But just because the statutory definition of "accident and sickness insurance" expressly *includes* medical or health insurance policies does not mean that it *excludes* other types of policies that insure "against loss or damage by the sickness, bodily injury,

7

or death by accident of the assured. . . ." That is because "[t]he word 'includes' is not exhaustive or exclusive." *LaMont v. Indep. Sch. Dist. No. 728*, 814 N.W.2d 14, 19 (Minn. 2012). On the contrary, the use of 'including' indicates legislative intent to clarify that insurance that provides for medical care is within the scope of "accident and sickness insurance" (*see id.*), but not that it is the *only* type of insurance encompassed by that term, or even that the preceding phrase is confined to items that are similar to the "included" example. While "general words are construed to be restricted in their meaning by *preceding* particular words," Minn. Stat. § 645.08(3) (emphasis added), the Court is aware of no principle of statutory construction that general words are construed to be restricted in their meaning when *followed* by "included" examples.

Having concluded that the operative term—"accident and sickness insurance"—is not limited to medical insurance, the Court must assess whether it includes disability insurance. The Court concludes that it does.

To start, the definition of "accident and sickness insurance" in clause 5(a) of Minnesota Statute § 60A.06, subdivision 1—insurance "against loss or damage by the sickness, bodily injury or death by accident of the assured or dependents"—is plainly broad enough to encompass disability plans. Indeed, it would be hard to read that definition and *not* conclude it included income lost as a result of disability. This is bolstered by the fact that there is no *other* type of insurance described in subdivision 1 that could even remotely be construed to refer to disability insurance, even though that

subdivision contains an exhaustive list of the types of insurance that may be offered in the state.

Plaintiff's reading is further undermined by the fact that the legislature, in describing the exclusions from § 604.18, chose to exclude "a written agreement of a health carrier" (as defined by § 62A.011, subdivision 2)—*not* simply "a health plan," (which is defined in § 62A.011, subdivision 3). Both definitions have at their heart the defined term "accident and sickness insurance," but where the definition of "health carrier" contains no exception for disability insurance, the definition of "health plan" specifically excludes coverage that is "limited to disability or income protection coverage." § 62A.011, subd. 3. In fact, if the legislature's intent was solely to exclude "health plans" from Minnesota Statute § 604.18, it could easily have done so by using that term and incorporating by reference the definition found in section 62A.011, subdivision 3. That is, there would have been no reason to send the reader down a long trail of citations to reach the definition of "accident and sickness insurance" if "health plans" would do. The canon against surplusage requires the Court to give effect to each word or phrase of a statute. *Shire v. Rosemount*, 875 N.W.2d 289, 292 (Minn. 2016). The trail of definitions was necessary here because the legislature intended to exclude from § 604.18 a broad category of "accident and sickness insurance"—a category that included disability insurance, not just health plans.

The Court's interpretation of "health carrier" as defined in § 62A.011 as including a company that sells disability insurance policies is also reinforced by reference to other

9

parts of the same chapter. First, consider § 62A.02, which addresses policy forms that must be filed with the commissioner of insurance for all "health plans." Here the statute is clear that, "*for purposes of this section*," the term "health plan" is defined to include the definition "in section 62A.011 *or* a policy of accident and sickness insurance as defined in section 62A.01." (Emphasis added.) In other words, for purposes of this section, the legislature expanded the definitional scope of "health plan" to include health plans as previously defined (which excluded disability policies) *plus* "policies of accident and sickness insurance." Additionally, the section makes a specific reference to "policies of disability or income protection insurance," Minn. Stat. § 62A.02, subd. 3(4), a reference that would only be necessary if such policies were included in the scope of the section, and therefore included in the meaning of "accident and sickness insurance."

Second, section 62A.03 says that "no policy of individual accident and sickness insurance" may be issued unless it complies with certain requirements. Subdivision 1, clause 9 provides for certain *additional* requirements *if* such a policy contains a provision for medical benefits. Clearly, therefore, not all "accident and sickness insurance policies" contain a provision for medical benefits; therefore, not all are "health insurance" as Plaintiff would use that term.

Perhaps most telling, section 62A.04, which sets forth standard provisions for "accident and sickness policy provisions," repeatedly refers to claims for "disability."

10

*See, e.g.*, § 62A.04, subd. 2(2), (5), and (6); subd. 3(6).[2]

In short, since Minnesota Statute § 604.18 excludes insurance offered by "health carriers," and health carriers are insurers who offer, among other things, "accident and sickness insurance policies," and since "accident and sickness insurance policies" as defined clearly include disability insurance, the Court finds that § 604.18 does not apply to Plaintiff's claim for benefits under her disability insurance policy. Because the Court finds no ambiguity in the meaning of the statute, it may not look beyond the statute to try to discern the legislative intent. Accordingly, Plaintiff's proposed amendment to add a claim under § 604.18 would not survive a motion to dismiss, and Plaintiff's motion should therefore be denied on the ground that it is futile.

### B. Whether Plaintiff's Proposed Claim Would be Futile if Minnesota Statute § 604.18 Applied

The Court has concluded that Plaintiff's motion should be denied on the ground that Minnesota Statute § 604.18 does not apply to the type of policy at issue here. However, for the sake of completeness, the Court will consider whether the PSAC states a plausible claim for bad faith denial of benefits if the case involved the type of policy to which the statute does apply.

#### 1. The Nature of the Required Showing

At the outset, the parties disagree about what standard of review the Court should apply in assessing the sufficiency of the proposed claim. Plaintiff contends a motion to

---

[2] Notably, the same section states that these very clauses, among others, "do not apply to health plans." § 62A.04, subd. 1(b).

11

amend a complaint in federal court to assert a claim under § 604.18 is governed solely by Federal Rule of Civil Procedure 15(a), which states that a court should "freely give leave" to amend a pleading when justice so requires. Defendant argues that if this were a case to which § 604.18 applied, Plaintiff would be required to make the more rigorous showing required by that statute. Minnesota Statute § 604.18, subdivision 4 requires a plaintiff to submit "one or more affidavits" establishing the factual basis for the motion and permits the opponent to file "one or more affidavits" challenging that basis. The court may grant the motion to amend only if it finds there is "prima facie evidence" to support the motion to amend.

Both parties cite cases from this District in support of their respective positions on the appropriate standard. *Compare Selective Ins. Co. of S.C. v. Sela*, Case No. 16-CV-4077 (PJS/SER), 2018 WL 1960450, at *7 (D. Minn. Apr. 26, 2018), *rev'd on other grounds*, 353 F. Supp. 3d 847, 853 (D. Minn. 2018) ("The Court agrees with Judge Rau that the pleading requirements imposed by § 604.18 do not apply in federal court.") *with Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*, Case No. 15-CV-3183 (ADM/LIB), 2018 WL 9919941, at *2–*7 (D. Minn. Mar. 8, 2018), *objections overruled*, 351 F. Supp. 3d 1187 (D. Minn. 2018), *aff'd on other grounds*, 962 F.3d 1015 (8th Cir. 2020) (holding that an analogous provision in Minnesota Statute § 549.191 applied to motions to assert a claim for punitive damages in federal court actions arising under Minnesota law). A similar divergence of opinion is reflected in cases discussing the relationship between Rule 15 and Minnesota Statute § 549.191, which governs the

application of punitive damages and prescribes a process analogous to that found in § 604.18.  *Compare Shank v. Carleton Coll.*, Case No. 16-cv-1154 (PJS/HB), 2018 WL 4961472, at *4 (D. Minn. Oct. 15, 2018), *aff'd*, 329 F.R.D. 610 (D. Minn. 2019) (concluding that the proper standard to evaluate the motion to amend is the one provided by Rule 15, not Minnesota Statute § 549.191), *with Rilley v. MoneyMutual, LLC*, Case No. 16-cv-4001 (DWF/LIB), 2018 WL 6920764, at *4–*7 (D. Minn. Dec. 13, 2018) (concluding that § 549.191 provided the relevant standard of proof to evaluate a motion to amend).

Having carefully reviewed the issue and the recent opinions, and in the absence of precedent from the Eighth Circuit resolving the issue, the Court concludes that the proper procedural standard to apply is supplied by Federal Rule 15, not Minnesota Statute § 604.18, subdivision 4.  The gatekeeping function that is required by § 604.18 obligates the court to consider evidence in determining the propriety of the motion to amend.  But the analysis under Rule 15 requires a court to accept as true the allegations in a proposed amended pleading and avoid consideration of matters outside the pleading.  The two standards are completely at odds.  Because Rule 15 "answers the question in dispute," it controls under the circumstances.  *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).

This conclusion is consistent with that reached in the majority of recent decisions by courts in this District to have considered the issue, whether in connection with Minnesota Statute § 604.18 or with the analogous statutory provision in § 549.191.  *E.g.*,

*Darmer v. State Farm Fire & Cas. Co.*, Case No. 17-cv-4309 (JRT/KMM), 2018 WL 6077985, at *2 (D. Minn. Nov. 21, 2018); *Redeemed Christian Church of God Strong Tower Par. v. Auto-Owners Ins. Co.*, Case No. 17-cv-1379 (WMW/FLN), 2018 WL 2135018, at *4 (D. Minn. May 9, 2018); *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, No. 15-MDL-2666 (JNE/FLN), 2017 WL 5187832, at *3–*4 (D. Minn. July 27, 2017).

This is not to say that Minnesota law has no bearing; *procedurally*, the Court is required to view the PSAC through the permissive Rule 15 lens, but it must nevertheless apply *substantive* Minnesota law in assessing whether the allegations in the PSAC state a plausible claim for bad faith denial of benefits. *See, e.g.*, *Prudential Ins. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007) (stating that generally "[a] district court sitting in diversity applies the law . . . of the state in which it sits") (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). In this case, that substantive Minnesota law is § 604.18, subdivision 2(a).

### 2. Whether Plaintiff's Allegations State a Plausible Claim for Bad Faith Denial of Benefits

As already described, in cases to which Minnesota Statute § 604.18 applies, the insured may recover additional amounts as a penalty if the insured can show: (1) the absence of a reasonable basis for denying the benefits of the insurance policy; and (2) that the insurer knew of the lack of a reasonable basis for denying the benefits of the insurance policy or acted in reckless disregard of the lack of a reasonable basis to do so. Minn. Stat. § 604.18, subd. 2(a). The first prong of the two-part test is an objective one:

14

the proper inquiry is whether a reasonable insurer under the circumstances would not have denied the insured the benefits of the insurance policy. *Peterson v. W. Nat'l Mut. Ins. Co.*, 946 N.W.2d 903, 910 (Minn. 2020). The second prong is a subjective test. Thus, to succeed on such a claim at trial, the insured would need to prove that the insurer knew, or recklessly disregarded or remained indifferent to information that would have allowed it to know, that it lacked an objectively reasonable basis for denying the insured's claim for benefits. *See id.* at 912. At the pleading stage, however, the proposed amended complaint needs only to allege enough factual material that, if accepted as true, would state a plausible claim to relief under the statute. *Iqbal*, 556 U.S. at 678.

Plaintiff's PSAC includes considerably more detail about the incident and the subsequent insurance claim than either her original or amended complaint. In particular, Plaintiff identifies several medical records she provided to Defendant that Plaintiff claims demonstrate that Defendant lacked an objectively reasonable basis for the denial and that Defendant either knew it or disregarded information that would have allowed Defendant to know it.

Defendant argues Plaintiff has not satisfied the pleading requirement for either prong. Defendant points to the scope of the investigation it conducted, which included evaluation by medical professionals, as evidence it acted reasonably in denying the claim. In support of its position, Defendant submitted copies of its reports as well as portions of Plaintiff's medical records.

In general, the Court may not consider materials outside the pleadings—let alone resolve factual disputes based on that information—at this stage. However, the Court *may* consider extra-pleading material necessarily embraced by the pleadings, such as "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *see also Piper Jaffray Companies, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 967 F. Supp. 1148, 1152 (D. Minn. 1997) (concluding the court could consider copies of the underlying complaints, the policies themselves, and all documents they incorporate by reference at the motion to dismiss stage); *Vizenor v. Babbitt*, 927 F. Supp. 1193, 1198 (D. Minn. 1996) (concluding the court could consider a document that the plaintiff's pleading relied on "as a primary, substantive source of their rights" at the motion to dismiss stage).

At oral argument, Defendant argued the materials it submitted in opposition to this motion are necessarily embraced by the PSAC, so they, and claims based on them, should be considered by the Court at this stage. The Court agrees in part. However, numerous of the documents Defendant submitted are *not* embraced by the PSAC, so they are beyond the scope of the matters the Court may consider here. For example, Defendant submitted a copy of the December 2018 emergency room record after Plaintiff's fall. [ECF No. 26-1 at 1.] Although the PSAC describes the incident and generally references her treatment immediately thereafter (*see* PSAC ¶ 7 ("On December 20, 2018 Plaintiff slipped and fell on the ice, striking her head. Plaintiff was diagnosed with a concussion,

16

and subsequently diagnosed with post-concussive syndrome. . . ."), the Court is not persuaded that the emergency room record is necessarily embraced by the PSAC. Similarly, Defendant submits a copy of a neuropsychological evaluation from April 2019. [ECF No. 26-1 at 20.] Plaintiff's PSAC references specific aspects of her treatment history (*e.g.*, PSAC ¶¶ 8, 13, 14), but does not reference this particular evaluation. Again, therefore, the Court cannot conclude it would be appropriate to count this evaluation among the materials it may consider as necessarily embraced by the PSAC.

But certain of the documents Defendant includes *are* necessarily embraced by the PSAC. For example, Defendant includes a letter Plaintiff's doctor sent to Plaintiff's attorney, responding to his request for information. (*See* November 8 Transcription Narrative [ECF No. 26-2 at 17].) This letter, called a "transcription narrative" and dated November 8, 2019,[3] is specifically referenced in Plaintiff's PSAC. (PSAC ¶ 8.) In fact, Plaintiff includes certain of the letter's details in her pleading, such as her doctor's observation that at Plaintiff's most recent visit in August 2019, she was working part time, but was still very fatigued and had significant vestibular symptoms. (*Compare* PSAC ¶ 8 *with* Transcription Narrative at 1.) This document is so fully incorporated by reference into Plaintiff's PSAC that the Court concludes it may be considered in assessing the sufficiency of the pleading.

The Court reaches the same conclusion about three other documents Defendant has submitted that are specifically referenced in the PSAC: (1) Plaintiff's medical record

---

[3] The transcription report was electronically signed by Plaintiff's provider on November 11, 2019. [ECF No. 26-2 at 18.]

from a visit to the National Dizzy & Balance Center on February 21, 2019 ([ECF No. 26-1 at 30]; PSAC ¶¶ 13, 15); (2) a Physician Consultant Memo prepared by Defendant's retained consultant, Dr. Deborah Syna, M.D., on June 6, 2019 ([ECF No. 26-1 at 34]; PSAC ¶ 16); and (3) the April 4, 2020 denial of Plaintiff's claim [ECF No. 26-2 at 29]; PSAC ¶¶ 9–10).  Therefore, the Court has considered these four documents—the November 8 Transcription Narrative, the February 21 National Dizzy & Balance Center Record, the June 6 Syna Memo, and the April 4 Denial Letter—in its evaluation of whether the PSAC would be likely to survive a motion to dismiss.[4]

In evaluating whether the PSAC plausibly alleges that Defendant's determination was neither objectively nor subjectively reasonable, the Court finds Dr. Syna's report to be of particular significance, as the parties seem to agree that Defendant relied heavily on her analysis when it denied Plaintiff's claim.  Dr. Syna's report begins by reviewing Plaintiff's medical records from before the incident through at least March 2019.  (June 6 Syna Report at 1–2.)  She then proceeds to answer certain questions, such as "What are the conditions [causing Plaintiff's alleged limitations] and are they supported by the medical information?"  (*Id.* at 3.)  Dr. Syna ultimately found that Plaintiff's medical records supported a conclusion that Plaintiff would have been unable to work for one to four weeks following the incident, but has largely already improved from her fall.  (*Id.*)

The Court considers these conclusions in the context of the PSAC's allegations and supporting materials.  For example, Plaintiff has alleged that in a medical record

---

[4] Although Plaintiff references other specific documents in her PSAC, neither party submitted them in relation to this motion, and they are not before the Court.

dated June 27, 2019, (not before the Court), Plaintiff's treating physician opined that Plaintiff would not experience a "meaningful recovery" for another six months, and that it would likely be a year before Plaintiff could resume her previous level of activity. (PSAC ¶ 8.)  Plaintiff's doctor also commented that as late as August 29, 2019, Plaintiff was still experiencing vestibular symptoms and fatigue.  (PSAC ¶ 8; Transcription Narrative at 1.)  Plaintiff also alleges that testing done in February 2019 revealed that she had 63% left unilateral vestibular weakness (where the normal range is 22–25%), and that testing in March 2019 gave Plaintiff a Dizziness Handicapped Score of 86 (where any score greater than 54 is considered "severe").  (PSAC ¶ 15; the February 21 Medical Record at 4.)  The PSAC alleges that Defendant had all of these records.  The PSAC also challenges Dr. Syna's June 6 report on three grounds: (1) the report erroneously characterized Plaintiff's vestibular deficit as "mild" where the testing actually showed it was "severe"; (2) the report's conclusion that Plaintiff's condition had improved was contrary to medical records; and (3) Defendant had not provided Dr. Syna with all of Plaintiff's medical records.  (PSAC ¶ 16.)

Although it is a close call, the Court finds that if this were a case to which § 604.18 applied, the facts stated in the PSAC, taken as true and drawing all inferences in Plaintiff's favor, and even when taking into account the additional documents necessarily embraced by the PSAC, sufficiently allege that Defendant unreasonably denied her claim for disability benefits and that Defendant knew or should have known that it lacked a

reasonable basis for doing so.[5]  Accordingly, if this were a case to which Minnesota Statute § 604.18 applied, the Court would recommend that Plaintiff's motion to amend be granted.

## III.   CONCLUSION

For the reasons set forth in Section II.A above, the Court respectfully recommends that Plaintiff's motion to amend her Amended Complaint to allege a claim for bad faith denial of benefits under Minnesota Statute § 604.18 be denied as futile on the ground that disability insurance policies like the one at issue here are excluded from the application of the statute.

Dated: May 25, 2021

                                             *s/ Hildy Bowbeer*
                                             HILDY BOWBEER
                                             United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

---

[5] In so finding, the Court expresses no opinion as to the likelihood of success of Plaintiff's claim before the factfinder, but rather reflects the liberal amendment standard contemplated by Rule 15.